# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| H. KRAMER & CO. and ZURICH ) <br> AMERICAN INSURANCE CO., a/s/o ) <br> H. KRAMER & CO., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CDN LOGISTICS, INC., ) <br> ) <br> Defendant. ) | Case No. 13 CV 5790 <br><br> Judge Joan B. Gottschall |

## MEMORANDUM OPINION & ORDER

H. Kramer & Co. hired CDN Logistics, Inc. to transport 44,842 brass ingots from Illinois to Iowa. On their way to Iowa, the ingots were stolen, resulting in a loss to H. Kramer of $148,646.20. H. Kramer sued CDN for this amount under the Carmack Amendment, 49 U.S.C. § 14706, which makes carriers who transport goods liable to shippers when the goods are damaged in transport. CDN moves to dismiss the complaint, arguing that the parties agreed that CDN would not be held liable for losses resulting from criminal acts such as theft. To limit its liability under the Carmack Amendment, a carrier like CDN must satisfy a number of requirements. Because the court cannot determine as a matter of law that CDN has satisfied those requirements here, the motion to dismiss is denied.

### I. BACKGROUND

H. Kramer recycles brass and copper ingots at a facility in Chicago, Illinois. On November 2, 2012, H. Kramer contracted with CDN to transport 44,842 of these ingots to Iowa. CDN took possession of the ingots and transported them in a trailer to a storage facility in

Melrose Park, Illinois. While the ingots were in Melrose Park, the trailer and the ingots were stolen. Although the trailer was later recovered, the ingots were never found.

When H. Kramer delivered the ingots to CDN, it prepared a bill of lading. The bill of lading stated that the bill was "subject to the classifications and tariffs in effect on the date of the issue in this Bill of Lading." (Mot. to Dismiss Ex. A, ECF No. 12-1.) It further provided:

> Shipper [H. Kramer] hereby certifies that he is familiar with all the terms and conditions of the said bill of lading, including those on the back thereof, set forth in the classification or tariff which governs the transportation of the shipment, and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns.

(*Id.*) CDN's "tariff" in turn provided in relevant part, "CDN will not be liable to any party to the shipping transaction for loss, damage or delay caused by any of the following: . . . (b) perils of the air, criminal acts of any person or entity . . . ." (*Id.*)

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of the motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

### III. ANALYSIS

The Carmack Amendment "cured a number of maladies that had afflicted the market for the interstate shipment of goods," including "the disparate schemes of carrier liability that existed among the states, some of which allowed carriers to limit or disclaim liability, others that permitted full recovery." *REI Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 697 (7th Cir. 2008). To solve this problem, the Carmack Amendment "created a nationally uniform rule of carrier liability concerning interstate shipments." *Id.* (internal quotation marks omitted).

Under the Carmack Amendment, carriers are liable "to the person entitled to recover under the receipt or bill of lading" for the "actual loss or injury to the property caused by" any carrier in the course of the interstate shipment. 49 U.S.C. § 14706(a)(1). "A shipper can thus be confident that the carrier will be liable for any damage that occurs to its shipment. And a carrier can accurately gauge, and thus insure against, any liability it may face when it agrees to carry something." *REI Transp.*, 519 F.3d at 697.

There is a "narrow exception" to the Carmack Amendment's general rule that carriers are to be held liable for damage they cause in the course of an interstate shipment. *Id.* at 698. Section 14706(c)(1)(A) provides:

> A carrier . . . may . . . establish rates for the transportation of property . . . under which the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and the shipper if that value would be reasonable under the circumstances surrounding the transportation.

In *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407 (7th Cir. 1987), the Seventh Circuit held that a carrier must satisfy four requirements to meet this exception. The carrier must: "(1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission; (2) obtain the shipper's agreement as to his choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a receipt or bill of

3

lading prior to moving the shipment." *Id.* at 1415. Because the tariff-filing requirement was abolished in 1995, keeping a tariff on file with the ICC is no longer a requirement for limiting liability. *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1063 (7th Cir. 2000). Instead, a carrier must "maintain an appropriate tariff pursuant to 49 U.S.C. § 13710(a)(1)." *See id.* Section 13710(a)(1) provides that a carrier "shall provide to the shipper, on request of the shipper, a written or electronic copy of the rate, classification, rules and practices, upon which any rate applicable to its shipment or agreed to between the shipper and carrier is based."

Against this backdrop, the court turns to CDN's motion to dismiss. CDN argues that the complaint must be dismissed because (1) H. Kramer "does not plead any facts to allege the existence of a bill of lading entitling it to recovery"; and (2) "the rules tariff and service conditions limit CDN's liability for criminal acts." (Mot. to Dismiss 3-4, ECF No. 12.)

CDN's first argument can be rejected out of hand. "To state a claim under the Carmack Amendment, a plaintiff must allege that (1) goods intended for interstate commerce were delivered to a carrier in good condition; (2) the goods were lost or damaged; and (3) the amount of damages as a result of the lost or damaged shipment." *Land O'Lakes, Inc. v. Joslin Trucking, Inc.*, No. 08-CV-355-BBC, 2008 WL 4756647, at *2 (W.D. Wis. Oct. 27, 2008). H. Kramer alleges that it "tendered the goods, in good order and condition, to CDN" (Compl. ¶ 8, ECF No. 1); "the goods and the trailer were stolen" (*id.* ¶ 9); and "[t]he value of the goods was $148,646.20" (*id.* ¶ 12). These allegations are sufficient to state a claim under the Carmack Amendment. *Land O'Lakes*, 2008 WL 4756647, at *2. CDN cites no authority to support its assertion that H. Kramer must also allege facts showing the existence of a bill of lading. Moreover, there appears to be no dispute that a bill of lading existed in this case, as CDN

attached the bill of lading as an exhibit to its motion to dismiss and relied on it extensively in its briefing.

CDN's second argument presents a more substantial question. CDN argues that it has satisfied the four *Hughes* requirements and that its liability is therefore limited for losses caused by criminal acts. The parties agree that CDN has satisfied the first *Hughes* requirement—that CDN has maintained an appropriate tariff pursuant to 49 U.S.C. § 13710(a)(1). But H. Kramer contends that CDN has failed to satisfy the other three requirements—that the carrier "obtain the shipper's agreement as to his choice of liability"; "give the shipper a reasonable opportunity to choose between two or more levels of liability"; and "issue a receipt or bill of lading prior to moving the shipment." 829 F.2d at 1415.

In support of this contention, H. Kramer relies on *Tempel Steel Corp. v. Landstar Inway, Inc.*, 211 F.3d 1029 (7th Cir. 2000), and *Converting Sys., Inc. v. Hot-Line Freight Sys., Inc.*, 801 N.E.2d 155 (Ill. App. Ct. 2003).

In *Tempel*, a carrier damaged a machine press while it was being transported in Mexico. *Id.* at 1029. The bill of lading stated that the press was received "subject to the classifications and tariffs in effect on the date of the issue of this Bill of Lading." *Id.* at 1030. The carrier's tariff in turn provided that "[a]t no time shall Carrier be held liable for any loss or damage to a shipment within the country of Mexico." *Id.* The carrier argued that it had no liability to the shipper given the tariff's limitation. *Id.* The Seventh Circuit rejected the carrier's argument, recognizing that "it has long been established . . . that actual notice is necessary for a limitation of liability to be enforced." *Id.* at 1030-1031 (citing *Hughes*, 829 F.2d at 1419-20). The court noted that the bill of lading did not reference the carrier's tariff "by number or any other identifier" and held that constructive notice of the tariff's terms was insufficient. *Id.* The court

5

reasoned that nothing in the Carmack Amendment "requires businesses to scrounge for limitations that have not been flagged for the carrier." *Id.* The court affirmed the district court's grant of summary judgment in favor of the shipper.

*Converting Systems* likewise involved a bill of lading that did not expressly limit the carrier's liability. 801 N.E.2d at 157. There, the carrier argued that because the shipper prepared the bill of lading, the shipper "chose" the levels of liability and "agreed" to reduced liability. *Id.* at 159. The court disagreed, emphasizing that "there was nothing on the bill that would indicate [the shipper] was explicitly given a choice of rates and liability levels," and "nothing [that] would indicate that [the shipper] had actual notice of [the carrier's] tariff . . . ." *Id.* Because "there was no explicit language in the bill or other evidence to support a conclusion that [the shipper] had actual notice of, or agreed to, any limitation of liability contained in [the carrier's] tariff[,]" the court held that the trial court's dismissal of the complaint was improper. *Id.* at 161.

To support its argument that it has satisfied the *Hughes* requirements, CDN relies on *Nieman Marcus Group, Inc. v. Quast Transfer, Inc.*, No. 98 C 3122, 1999 WL 436589 (N.D. Ill. 1999), and *Siren, Inc. v. Estes Express Lines,* 249 F.3d 1268 (11th Cir. 2001).

In *Nieman Marcus*, the plaintiff, "a sophisticated shipper, chose and prepared [a] bill of lading form, [which] expressly incorporated the applicable tariff and expressly stated that plaintiff was aware of the terms of the tariff and bill, and the form provided plaintiff with the opportunity to insert a declared value, which plaintiff instead chose to leave blank." *Id.* at *4. The court concluded that "[u]nder such circumstances, plaintiff had a reasonable and fair opportunity to select a higher limit of liability." *Id.* The court found that the plaintiff "agreed to the limitation of liability by signing a bill of lading that incorporated terms of the Uniform Straight Bill of Lading and defendant's tariff" and that "[a]s a sophisticated shipper, plaintiff

[was] charged with knowledge of the applicable tariff." *Id.* The court granted summary judgment in favor of the defendant carrier based on the limitation of liability contained in the defendant's tariff. *Id.* at *5.

Finally, in *Siren*, the bill of lading "contained very little information other than the absolute essentials" but "twice indicated that the commodities should travel under 'Class 85.'" 249 F.3d at 1269. At trial, the carrier introduced "uncontroverted evidence that 'Class 85" was understood throughout the trucking industry to mean . . . that the carrier's liability would be limited to $11.87 per pound." *Id.* The court held that "when a shipper drafts a bill of lading, incorporating language which is universally understood throughout the motor carrier industry to limit the liability of the carrier, said shipper will be bound by the terms of the contract, irrespective of whether the shipper had actual knowledge of the limiting aspect of those terms." *Id.* at 1274. Accordingly, the court vacated a judgment that had been entered in favor of the shipper in an amount greater than the $11.87 per pound limit. *Id.* at 1274-75.

These cases are somewhat difficult to reconcile. On the one hand, CDN is correct that this case closely resembles *Nieman Marcus*. H. Kramer prepared a bill of lading certifying that it was "familiar with all the terms and conditions of the said bill of lading, including those . . . set forth in the classification or tariff which governs the transportation of the shipment." (Mot. to Dismiss Ex. A.) It had an opportunity to declare a value for the ingots but did not do so. (*See id.*) The *Nieman Marcus* court found these facts sufficient to determine as a matter of law that the carrier obtained the shipper's agreement as to its choice of liability and gave the shipper a reasonable opportunity to choose between different levels of liability. *See* 1999 WL 436589, at *4.

7

But the bill of lading in *Tempel* similarly stated that it was subject to tariffs that were in effect at the time the bill of lading was issued, yet the Seventh Circuit held that the shipper was not required to "snoop around to see what a carrier's [tariff] may contain." 211 F.3d at 1031 ("[I]t is hard to envisage how a shipper can be said to agree to a limitation of liability of which it lacked actual knowledge."). The critical inquiry under *Tempel* is whether the shipper has "actual notice," and that question cannot be answered merely by looking to whether the bill of lading refers to a tariff. *See Hillenbrand Indus., Inc. v. Con-Way Transp. Servs., Inc.*, No. NA 00-0255CBS, 2002 WL 1461687, at *6-7 (S.D. Ind. June 19, 2002) (finding that a bill of lading's reference to the "applicable tariff" was a "vague statement, obviously used formulaically on every . . . shipping order no matter the carrier" and further concluding that "[a]ctual notice is not achieved by referencing the uniform straight bill of lading"). To the extent that *Tempel*'s actual notice requirement conflicts with *Nieman Marcus*'s holding that sophisticated shippers are charged with knowledge of applicable tariffs, *Tempel* is binding on this court; *Nieman Marcus* is not.

Even were *Tempel* distinguishable in some respect, it would be inappropriate for the court to hold, on a motion to dismiss, that CDN's liability is limited as a matter of law. As the cases cited by both parties demonstrate, whether a party has actual notice of a limitation of liability is a fact-intensive inquiry. *See, e.g.*, *Siren*, 249 F.3d at 1269 (relying on trial court testimony showing that term in bill of lading was understood throughout the trucking industry to establish a certain limit on liability). Here, the court cannot consider the bill of lading and CDN's tariff without converting the motion to dismiss into a motion summary judgment, as those documents are "matters outside the pleadings." Fed. R. Civ. P. 12(d). And CDN's motion would certainly be denied under the standards of Rule 56, as there are a number of unresolved factual issues at

8

this early stage of the case. For example, H. Kramer disputes that CDN has satisfied the fourth requirement under *Hughes* that it "issue a receipt or bill of lading prior to moving the shipment," 829 F.2d 1407 (H. Kramer issued the bill of lading, and there is no evidence in the record that CDN issued a receipt). Additionally, H. Kramer disputes that it signed the bill of lading, calling into question whether H. Kramer "agreed" to any limitation of liability.

Thus, CDN's motion to dismiss is denied. If after discovery CDN believes that it can demonstrate as a matter of law that H. Kramer had actual notice of the limitation of liability, it may renew its argument in a motion for summary judgment.

### IV. CONCLUSION

Because the court cannot determine as a matter of law that CDN effectively limited its liability for losses caused by criminal acts, CDN's motion to dismiss is denied. The parties are to appear for a status hearing on July 25, 2014, at 9:30 a.m.


ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 11, 2014